# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3510 | **DATE** | JUN 18 2001 |
| **CASE TITLE** | Cranshire Capital v. Trimfast Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    For the reasons stated in the attached Memorandum Opinion and Order, the Plaintiffs' motion for summary judgment [ Doc. # 26-1] is GRANTED. Entry of judgment in Plaintiffs' favor and against Trimfast will await the court's determination of the amount of damages. Plaintiffs shall file a supplemental brief with this court in accordance with the attached Memorandum order by July 16, 2001.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]



| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 20 2001 | |
| | Notified counsel by telephone. | | date docketed | 31 |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FD-7 FILED FOR DOCKETING | | |
| dc(lc) | courtroom deputy's initials | 01 JUN 19 PH 4:39 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRANSHIRE CAPITAL, L.P., an Illinois Limited Partnership; S. ROBERT PRODUCTION, LLC, an Illinois Limited Liability Company; and the DOTCOM FUND, LLC, a Delaware Limited Liability Company,<br><br>        Plaintiffs,<br><br>v.<br><br>TRIMFAST GROUP, INC., a Nevada Corporation,<br><br>        Defendant. | No. 00 C 3510<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Cranshire Capital, L.P., S. Robert Productions, LLC, and the Dotcom Fund, LLC (collectively, "Plaintiffs") bring a breach of contract claim against the defendant Trimfast Group, Inc. ("Trimfast"). Before the court is Plaintiffs' motion for summary judgment. For the reasons discussed below, Plaintiffs' motion is granted.

### I. Factual Background

This beach of contract case is before this court under diversity jurisdiction. Trimfast is a Nevada corporation with its principal place of business in Tampa, Florida. Plaintiffs are all Illinois entities.

In July 1999, Trimfast and Plaintiffs entered into a Securities Purchase Agreement ("Purchase Agreement") and the Registration Rights Agreement ("Registration Agreement"). Within three business days following the execution of the Purchase and Registration Agreements, Plaintiffs wired approximately one million dollarsin financing to Trimfast. In exchange, Plaintiffs acquired 10,000 shares of Trimfast Series A preferred stock and warrants to acquire 149,254 shares of Trimfast common stock. The Purchase Agreement provided that investors were entitled to convert their preferred stock into shares of Trimfast's common stock in accordance with the Certificate of Designations, Preferences, and Rights of Series A Covertible Preferred Stock ("Certificate of Designations"), which set forth the rights of guaranteed holders to Trimfast's Series A preferred stock.

Under the terms of the Registration Agreement, Trimfast was obligated to file, within 120 days of the issuance of Plaintiff's preferred stock, a Registration Statement with the Securities and Exchange Commission ("SEC") covering the resale of all of the common stock underlying the Plaintiff's preferred stock and warrants. See Reg. Agree. ¶¶ 2(a), 3. Trimfast authorized the issuance of a sufficient number of shares of its common stock to permit the conversion of the Plaintiffs' preferred stock and the exercise of Plaintiffs warrants but failed to file a registration statement with the SEC covering the issuance of those shares of common stock. As of late February 2001, Trimfast had still failed to file the required statement. Without an effective registration statement, Plaintiff were precluded from converting their preferred stock into common stock or exercising their warrants because the underlying Trimfast stock was not salable to a third-party.

The Registration Agreement also provided for liquidated damages in case Trimfast failed to file the required registration statement ("registration default"). Paragraph 8 of the Registration Agreement read:

> [I]n the event of such registration default, the [Trimfast] Company hereby agrees to pay liquidated damages ("Liquidated Damages") to each [Plaintiff] Buyer following the occurrence of such Registration Default in an amount determined by multiplying (i) $2.00 per Preferred Share initially purchased by such Buyer by (ii) the percentage derived by dividing (A) the actual number of days elapsed from the past day of the date of the Registration Default, or the prior 30-day period, as applicable, to the day such Registration Default has been completely cured by (B) 30, in cash.

Trimfast has not paid Plaintiffs any liquidated damages.

On a number of occasions between November 1999 and February 2000, Plaintiffs notified Trimfast in writing of the latter's registration default. Plaintiffs requested that Trimfast honor its obligations under the Purchase and Registration Agreements and Certificate of Designations. When Trimfast failed to remedy their default, Plaintiffs sought to redeem their Preferred Stock. Paragraph 3(d) of the Certificate of Designations provides that if Trimfast failed to procure an effective registration statement within 120 days after the issuance of the preferred stock, a "triggering event" would occur, whereby Plaintiffs could demand that Trimfast redeem all or a portion of their preferred shares:

> [A]t a price per Preferred Share equal to the greater of (i) 125% of the Stated Value and (ii) the product of (A) the Conversion Rate in effect at such time as such Holder delivers a Notice of Redemption at Option of Buyer Upon a Triggering Event on which the Principal Market, or the market or exchange where the Common Stock is then traded, is open for trading.

Certificate of Designations ¶ 3(b). In addition, paragraph 3(g) requires Trimfast, upon notice of redemption from an investor, to pay such investor the redemption price plus interest within five business days. By letters dated April 25, 2000, and May 25, 2000, Plaintiffs notified Trimfast

-3-

that they had elected to redeem all of their Preferred Stock pursuant to the Certificate of Designations. Trimfast, however, has not redeemed Plaintiff's preferred stock. Furthermore, Paragraph 1(a) of the Certificate of Designation entitles Plaintiffs as holders of Trimfast's Series A preferred stock to dividends "at a rate of eighth percent (8%) per annum, computed on the basis of $100.00 per Preferred Share." It also provides that Plaintiffs are entitled to receive dividend payments on each July 1 and January 1, beginning January 1, 2000, and that "such dividends shall be cumulative from (and including) such Preferred Share's Issuance Date [ ] and shall accrue daily, whether or not earned or declared, thereafter until paid and be calculated on the basis of a 360 day year." Trimfast has not paid Plaintiff any dividends due and owing.

## II. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that there exists no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the

non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53.

Trimfast's response to the Plaintiffs' motion for summary judgment was due on March 26, 2001. The defendant, however, has failed to file a response brief. The Local Rules for the United States District Court for the Northern District of Illinois provide that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B). Although failure to file responsive papers is not automatic grounds for an entry of summary judgment against the nonmoving party, statements of fact submitted by the moving party will be deemed undisputed to the extent that they are supported by the record. Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1312 (7th Cir. 1995); Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993).

### III. Discussion

In an action for breach of contract, Illinois law[1] requires that the plaintiff demonstrate: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of

---

[1] The parties agree that Illinois law applies to this case. See Mot. for Judgment on the Pleadings. Paragraphs 11(a) of the Purchase Agreement and and 11(d) of the Registration Agreement establish that the agreements are "governed by and construed in all respects by the internal laws of the State of Illinois."

the contract by the defendant; and (4) resultant injury to the plaintiff. Gonzalzlez v. American Express Credit Corp., 733 N.E.2d 345, 351, 315 Ill. App. 3d 199, 206, 247 Ill. Dec. 881, 887 (Ill. App. Ct. 2000). Here, the pleadings, depositions, and admissions on file establish that there exists no genuine issue of material fact as to any of the above elements. As such, Plaintiffs are entitled to summary judgment.

The validity of the Purchase Agreement, the Registration Agreement, and the Certificate of Designations is unchallenged as is the fact that Plaintiffs satisfied their obligations therein. Furthermore, the undisputed facts establish that Trimfast materially breached its obligations under the contracts at issue. First, Trimfast failed to timely file a Registration Statement for its common stock underlying Plaintiff's preferred stock and warrants. Pursuant to the Registration Statement, Trimfast was to file such a statement with the SEC within 120 days of the issuance of the Plaintiffs' preferred stock. The defendant, however, has not made any filings, even as of February 2001, when Plaintiffs submitted their summary judgment motion.[2]

Second, in the event that Trimfast defaulted on the registration filing, the Registration Statement required the defendant to pay Plaintiffs liquidated damages. Trimfast has not made any such payments. Third, Trimfast has failed to redeem Plaintiffs' preferred stock. The Certificate of Designation provides that if Trimfast causes a registration default, Plaintiffs could require the company to redeem their preferred stock. Although Plaintiffs gave the defendant

---

[2] In response to the Plaintiffs' earlier motion for judgment on the pleadings, Trimfast argued that the parties had modified their written agreement so as to provide for an extension for the SEC filing. At that juncture, the court found that Trimfast's argument, together with its denial of material facts, see Answ. ¶ 31, precluded judgment. Trimfast now appears to have abandoned its modification of contract argument, and, in failing to respond to Plaintiffs' motion, all defenses.

written notice of their intent to redeem their preferred stock, Trimfast has refused to honor the redemption notice. Finally, Trimfast has failed to pay dividends due and owing on Plaintiffs' preferred stock. The Certificate of Designations provides that Plaintiffs are entitled to receive periodic dividend payments, and sets forth a formula by which dividends are to be calculated.

If a contract is breached and the plaintiff claims solely monetary damages, Illinois law directs the court to look to the contract to determine if and to what extent the injured party may recover its losses. First Nat'l Bank and Trust Co. of Evanston v. First Nat'l Bank of Skokie, 533 N.E.2d 8, 14, 178 Ill. App. 3d 180, 188, 127 Ill. Dec. 390, 396 (Ill. App. Ct. 1988). Here, the parties, both sophisticated in business matters, agreed on a formula for calculating damages. That formula, unambiguously set forth in the Purchase and Registration Agreements and the Certificate of Designations, entitles Plaintiffs to redemption damages in the amount of $1,250,000.00.

In addition, Plaintiffs contracted for liquidated damages.[3] Although this court will honor a valid liquidated damages provision, it cannot enforce a penalty clause.

> Damages for breach by either e party may be liquidated in the agreement but only at an amount that is reasonable int eh light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A terms fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

---

[3] The liquidated damages provision, set forth in paragraph 8 of the Registration Agreement, read:
> [I]n the event of such registration default, the [Trimfast] Company hereby agrees to pay liquidated damages ("Liquidated Damages") to each [Plaintiff] Buyer following the occurrence of such Registration Default in an amount determined by multiplying (i) $2.00 per Preferred Share initially purchased by such Buyer by (ii) the percentage derived by dividing (A) the actual number of days elapsed from the past day of the date of the Registration Default, or the prior 30-day period, as applicable, to the day such Registration Default has been completely cured by (B) 30, in cash.

Penske Truck Leasing Co, L.P. v. Chemetco, Inc., 725 N.E.2d 13, 19, 311 Ill. Spp. 3d 446, 454, 244 Ill. Dec. 218, 224 (Ill. App. Ct. 2000) (quoting Restatement (Second) of Contracts § 356, Comment b (1979)). Trimfast's registration default precluded Plaintiffs from deriving the benefit of their bargain: they were prevented from converting their preferred stock into common stock or exercising their warrants because the underlying Trimfast stock was not salable to a third-party. The resulting injury was difficult to measure at the time of contracting and the contracted formula reasonably compensates Plaintiffs for their injury. See Siegel v. Levy Org'n Dev't Co., Inc., 538 N.E.2d 715, 717, 182 Ill. App. 3d 859, 862, 131 Ill. Dec. 340, 342 (Ill. App. Ct. 1989). Thus, the court concludes that the liquidated damages provision provided for in paragraph 8 of the Registration Agreement is valid.

To avoid the imposition of a penalty, however, the court will limit the duration used to arrive at the amount of liquidated damages. See Reg. Agree. ¶ 8 (stating that liquidated damages based on "the actual number of days elapsed from the past day of the date of the Registration Default, or the prior 30-day period, as applicable, to the day such Registration Default has been completely cured"). Although, as far as the court is aware, Trimfast has yet to make the requisite filing with the SEC, the liquidated damages period used in the formula shall be cabined by the date by which Trimfast was obligated to redeem Plaintiffs' preferred shares in the aftermath of Plaintiffs' redemption notice. The court is concerned that allowing the liquidated damages amount to accrue well past that date would in effect transform the liquidated damages provision into a penalty for nonperformance rather than a reasonable compensation for the harm suffered by Plaintiffs. In other words, once Plaintiffs elected to redeem their preferred shares, the

liquidated damages provision, which compensated Plaintiffs for their inability to convert their preferred stock into common stock, ceased to offer them a remedy.

Lastly, Plaintiffs shall be paid the full amount due and owing on unpaid dividends.

By July 16, 2001, Plaintiffs are directed to file with the court a calculation of the amounts owed for liquidated damages and unpaid dividends. Plaintiffs shall also file a supplemental brief addressing the extent to which the remedies sought are cumulative, especially whether the liquidated damages and the redemption provisions are mutually exclusive.

## IV. Conclusion

For the foregoing reasons, the Plaintiffs' motion for summary judgment is granted. Entry of judgment in Plaintiffs' favor and against Trimfast will await the court's determination of the amount of damages.

Enter:

*David H. Coar*

**David H. Coar**
**United States District Judge**

Dated: JUN 18 2001